Filed
File Date: 7/22/2022 12:59 PM
Hillsborough Superior Court Northern District
E-Filed Document

**EXHIBIT A**

### THE STATE OF NEW HAMPSHIRE

**HILLSBOROUGH, SS.**                                **SUPERIOR COURT**

PAULA GAMBESKI,

                Plaintiff,

    vs.

UPS SUPPLY CHAIN SOLUTIONS, INC.,

             Defendant.

216-2022-CV-00429

CIVIL ACTION NO. _____

### PETITION FOR REMOVAL

      Pursuant to RSA 354-A, Defendant UPS Supply Chain Solutions, Inc. ("UPS" or "Defendant") by and through its attorneys, Littler Mendelson, P.C., hereby petitions this Court for removal of this action to the Superior Court of the State of New Hampshire for Hillsborough County.  In support of this Petition for Removal, Defendant states as follows:

      1.      On May 23, 2017, Paula Gambeski ("Plaintiff") filed a Charge of Discrimination with the New Hampshire Commission for Human Rights, ES(H)(R) 0120-17, and the Equal Employment Opportunity Commission, Case No. 16D-2017-00126, asserted claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. and RSA 354-A.  On June 14, 2018, Plaintiff filed an Amended Charge of Discrimination. Attached as **Exhibit A** is a copy of Plaintiff's Charge of Discrimination and Amended Charge of Discrimination.

      2.      The Complainant is a resident of New Hampshire.  Upon information and belief, her address is 37 Hawthorne Drive, #114, Bedford, NH 03110.

3.      UPS is a Delaware corporation with an office located at 52 Pettengill Road, Londonderry, New Hampshire 03053.

4.      As set forth herein, this action is removable to this Court under RSA 354-A:21a, which provides in relevant part as follows:

> Any party alleged to have committed any practice made unlawful under this chapter may, in any case in which a determination of probable-cause has been made by the investigation commissioner, remove said complaint to superior court for trial… A superior court trial shall not be available to any party if a hearing before the commission has begun or has concluded pursuant to RSA 354 A:21,II(b)…

5.      On May 25, 2022 Sarah E. Burke Cohen, the Assistant Director, issued Orders of Notice stating that the Investigating Commissioner assigned to the charge made a finding of probable cause as to the claims of gender discrimination (sexual harassment). The Investigating Commissioner also made a finding of no probable cause on the claim of retaliation. (Attached as **Exhibit B** is a copy of the Orders of Notice).

6.      Defendant denies Plaintiff's claims in their entirety.

7.      Defendant wishes to exercise its right to a jury trial in this Court pursuant to the provisions of NH RSA 354-A:21a.

8.      No hearing before the Commission concerning this matter has begun.  A hearing is presently scheduled for February 15, 2023.

9.      A copy of this Notice has been provided to Plaintiff and to the New Hampshire Commission for Human Rights.

10.      In compliance with the requirements of RSA 354-A:21a, Defendants hereby petition this Court for the removal of this action from the New Hampshire Commission for Human Rights to this Court.

Dated:  July 22, 2022                     Respectfully submitted,


                                      */s/ Melinda J. Caterine*
                                      Melinda J. Caterine  (Bar No. 16664)
                                      Email:  mcaterine@littler.com
                                      LITTLER MENDELSON, P.C.
                                      One Monument Square, Suite 600
                                      Portland, ME 04101
                                      Phone:  (207) 774-6001

                                      Attorney for Defendant

## CERTIFICATE OF SERVICE

I, Melinda J. Caterine, hereby certify that a true and accurate copy of the

foregoing pleading, has been mailed, first class postage prepaid to the following:

Nancy Richards-Stower, Esquire
Law Offices of Nancy Richards-Stower
136 Portland Street
Yarmouth, ME 01096
603-881-3312
nrichardssto@igc.org

Sarah E. Burke Cohen, Esquire
Assistant Director
New Hampshire Commission for Human Rights
2 Industrial Park Drive, Bldg. 1
Concord, NH 03301

Dated:  July 22, 2022                              Respectfully submitted,


                                                   */s/ Melinda J. Caterine*
                                                   Melinda J. Caterine  (# 16664)
                                                   Email:  mcaterine@littler.com
                                                   LITTLER MENDELSON, P.C.
                                                   One Monument Square, Suite 600
                                                   Portland, ME 04101
                                                   Phone:  (207) 774-6001

                                                   Attorney for Defendant

Filed
File Date: 7/22/2022 12:59 PM
Hillsborough Superior Court Northern District
E-Filed Document

**RECEIVED**

EEOC Form 5 (11/09)

**EXHIBIT A**

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|

MAY 23 2017

NH COMMISSION FOR HUMAN RIGHTS

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| | [X] FEPA | ES(H)(R) 0120-17 |
| | [X] EEOC | 16D-2017-00126 |

| New Hampshire Commission for Human Rights | and EEOC |
|---|---|
| State or local Agency, if any | |

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Paula Gambeski | (603) 315-3566 | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 87 Hawthorne Dr. #114 | Bedford, NH 03110 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| UNITED PARCEL SERVICE, INC. | 500 or More | (800) 742-5877 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 52 Pettingil Rd. | Londonderry, NH 03053 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| United Parcel Service, Inc. | 500 or More | (800) 742-5877 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 55 Glenlake Parkway | Atlanta, GA 30328 | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest · Latest |

| | RACE | | COLOR | [X] SEX | | RELIGION | | NATIONAL ORIGIN |
|---|---|---|---|---|---|---|---|---|
| [X] | RETALIATION | | AGE | | DISABILITY | | GENETIC INFORMATION |

08-01-2015 · 04-26-2017

[X] OTHER (Specify) **RSA 354-A**

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

1. I am female.
2. United Parcel Service (UPS) hired me on or about 6/29/15 to work as a Kitter at its Londonderry, New Hampshire facility.
3. In approximately August 2015, I was promoted to Quality Assurance Auditor.
4. In approximately July and August 2015, Cliff (L/N/U) worked temporarily in the Londonderry facility.
5. Cliff remarked to me, "Show me your tits."
6. Cliff asked me to have a relationship with him.
7. I turned Cliff down.
8. I reported the comments to Samantha Johnston.
9. Ms. Johnston did nothing.
10. In approximately June 2016, Supervisor Dale Houston made gestures by wiggling his fingers toward my breasts.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

_5/23/2017_ _Paula Gambeski [signature]_

Date · Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

_Del F. O'Brule exp. 12-19-17_

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

_Paula Gambeski [signature]_

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)

May 25, 2017 _Del F. O'Brule exp 12-19-17_

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA | ES(H)(R) 0120-17 |
| | [X] EEOC | **16D-2017-00126** |

| **New Hampshire Commission for Human Rights** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

11. **I asked Mr. Houston to lower his hands.**
12. **Manager Kevin Frost watched Mr. Houston harass me.**
13. **Mr. Frost did nothing.**
14. **Package handlers made unwanted comments to me on other occasions, such as 'you have a nice ass, could you bend over?'**
15. **In approximately February 2017, Kenny (L/N/U) sent a picture of a penis to me via text message.**
16. **I told Lead Person Brad Hansford of this incident.**
17. **Mr. Hansford laughed and replied, "I haven't been with any girl in a year, if you ever want to hook up."**
18. **On or about 3/27/17, I went in a truck to check a cart.**
19. **Kenny approached me from behind and picked me up by my butt.**
20. **I reported the incident to Mr. Hansford.**
21. **Mr. Hansford did nothing.**
22. **On 4/19/17, Mr. Mulcahey shoved me.**
23. **I reported the incident to Human Resources and to the Londonderry Police Department.**
24. **That evening, I received a call from Human Resources informing me I could not return to work until they finished the investigation.**
25. **Mr. Mulcahey continued to work.**
26. **On 4/21/17, I met with Human Resources Manager Jessica Swanson and Human Resources Representative Stephanie (L/N/U) to provide my statement on the incident.**
27. **Ms. Swanson said I was still employed.**
28. **Ms. Swanson would not return my UPS employee badge to me.**
29. **On 4/21/17, Ms. Swanson denied my request for a copy of my personnel file.**
30. **On 4/26/17, Ms. Swanson informed me I was discharged for violation of company rules.**
31. **I assert that the employer repeatedly failed to act when I reported incidents of sexual harassment.**
32. **I further assert that the employer retaliated by discharging me for reporting the incidents.**
33. **I have and continue to suffer damages, including but not limited to lost wages, lost earning capacity, lost employment benefits, emotional distress, humiliation, inconvenience, and loss of enjoyment of life. I seek all damages to which I am entitled.**

RECEIVED

MAY 23 2017

NH COMMISSION
FOR HUMAN RIGHTS

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | ℈l.O'Rℓℯ  exp 12-19-17 |
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| | SIGNATURE OF COMPLAINANT |
| | *(signature)* |
| May 23 2017      *(signature)* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |
| *Date*          *Charging Party Signature* | May 23, 2017  ℈l.O'Rℓℯ  exp 12-19-17 |

C2

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | [X] FEPA | |
| | [X] EEOC | **16D-2017-00126** |

| **New Hampshire Commission for Human Rights** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| Name *(indicate Mr., Ms., Mrs.)* | Home Phone *(Incl. Area Code)* | Date of Birth |
|---|---|---|
| **Paula Gambeski** | **(603) 315-3566** | |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **37 Hawthorne Dr. #114** | **Bedford, NH 03110** | |

Named is the Employer. Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **UPS Supply Chain Solutions, Inc.** | **500 or More** | **(800) 742-5877** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **52 Pettingil Rd.** | **Londonderry, NH 03053** | |

| Name | No. Employees, Members | Phone No. *(Include Area Code)* |
|---|---|---|
| **United Parcel Service, Inc.** | **500 or More** | **(800) 742-5877** |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| **55 Glenlake Parkway** | **Atlanta, GA 30328** | |

| DISCRIMINATION BASED ON *(Check appropriate box(es).)* | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest       Latest |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

[ ] RACE   [ ] COLOR   [X] SEX   [ ] RELIGION   [ ] NATIONAL ORIGIN

[X] RETALIATION   [ ] AGE   [ ] DISABILITY   [ ] GENETIC INFORMATION

[X] OTHER *(Specify)* **RSA 354-A**

DATE(S) DISCRIMINATION TOOK PLACE
Earliest **08-01-2015**   Latest **04-26-2017**

[ ] CONTINUING ACTION

THE PARTICULARS ARE (*If additional paper is needed, attach extra sheet(s)*):

1. **This AMENDMENT pursuant to NH Admin. R. PART Hum 202.05 (a)(1), cures technical defects or omissions in the original charge.**

2. **The name of the Respondent is "UPS Supply Chain Solutions, Inc." and not "United Parcel Service, Inc." as originally stated.**

**RECEIVED**

AUG 0 3 2017

NH COMMISSION
FOR HUMAN RIGHTS

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.  SIGNATURE OF COMPLAINANT |

8/2/17    *Paula Gambeski*

Date    Charging Party Signature

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
*(month, day, year)*   8/2

GURPREET KAUR
Notary Public, New Hampshire
My Commission Expires May 25, 2019

EEOC Form 5 (5/01)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | FEPA | ES(H)(R) 0120-17 |
| | EEOC | #16D- 2017-00126 |

| New Hampshire Commission for Human Rights | and EEOC |
|---|---|

*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) *PLEASE CALL MY ATTORNEY: NANCY RICHARDS-STOWER* | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Paula Gambeski**    603-881-3312 | **603-315-3566** | **3-10-65** |

Street Address

**37 Hawthorne Drive # 114, Bedford, NH 03110**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **UPS Supply Chain Solutions, Inc.** | **500+** | **800-742-5877** |

| Street Address | City, State and ZIP Code |
|---|---|
| **52 Pettingil Road  Londonderry, NH  03053** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **United Parcel Service, Inc.** | **500+** | **800-742-5877** |

| Street Address | City, State and ZIP Code |
|---|---|
| **55 Glenlake Parkway, NE    Atlanta, GA 30328** | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

| | | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|---|
| | | Earliest          Latest |

[ ] RACE  [ ] COLOR  [X] SEX  [ ] RELIGION  [ ] NATIONAL ORIGIN    **8-1-15**     **4-26-17**

[X] RETALIATION  [ ] AGE  [ ] DISABILITY  [X] OTHER (Specify below.)

**NH RSA 354-A**

[ ] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

## Please see attached sheets.

Please send all correspondence to my attorney: at this Maine address*:

Nancy Richards-Stower
136 Portland Street
Yarmouth, ME 04096

*(Attorney Richards-Stower's law office remains in Merrimack NH*
*(Law Offices of Nancy Richards-Stower*
*32 DW Hwy, Suite 7*
*Merrimack, NH 03054)*
*but due to postal delivery issues*
*she now receives*
*all mail at her Maine address)*

**RECEIVED**

**JUN 21 2018**

**NH COMMISSION FOR HUMAN RIGHTS**

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

6/14/18
Date          Charging Party Signature

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE
(month, day, year)

TRICIA M ABOOD
Notary Public, New Hampshire
My Commission Expires Jul 24, 2018

## I. INTRODUCTION

1. My name is Paula Gambeski and I have been harassed and discriminated against by my employer, United Parcel Service, Inc. and UPS Supply chain Solutions, Inc., because of my gender (female) and retaliated against because I complained about my discrimination and harassment.

2. This is an amendment to my original charge of discrimination filed with the N.H. Commission for Human Rights on or about April 17, 2017 before my termination that took place on or about April 24, 2017.  The charge was originally amended on or about July 2017.  This amendment provides additional details.

3. My paystubs and my benefits information and company procedure brochures each carry the UPS trademark/logo; and the United Parcel Service name; and also in smaller print carry the name "UPS Supply Chain Solutions, Inc.".

4. Accordingly I name both companies as joint employers at this time.

5. I began employment with the above employers on or about June 29, 2015 at the UPS Londonderry, NH location.  I was hired as a Kitter.

6. I was promoted shortly thereafter in August, 2015 to Quality Assurance Auditor.

## II. ABOUT CLIFF SMITH WHO HARASSED ME

7. **A management employee, CLIFF SMITH, arrived from Georgia.**  I learned that he was sexually harassing Samantha Johnston and she refused to work with him.

    a. I believe he came in between the employment of Scott Gregory (for whom Samantha had been an administrative assistant) and Jeremy Helming, who came aboard on or about October, 2015.

    b. I was informed that Smith asked Samantha sexual questions, and touched Samantha and she reported his sexual harassment to management in Kentucky, who were KENNY MILLS and DAN DOANE.

    c. I was informed that Samantha told Mills and Doane that she didn't want to work with Smith; that he would crowd her at her desk and although she repeatedly told him to "back off" he continued to do so.

    d. Accordingly, before Smith harassed me in 2015-2016, upper management personnel were fully aware of Smith's propensity to sexually harass subordinate employees in New Hampshire.

1

e. At the time I was the only "UPS Quality" employee left (others were temporary employees employed by The Job Store) and I was being trained to cover for Samantha when she was out, so I became subordinate to Smith.

f. Smith sexually harassed me. He even said to me "Show me your tits."

g. Smith said to me: "You've got a nice ass, Paula;" "You [Paula] are stacked;" "Jennifer is my 'go-to-girl' in Georgia. I'm looking for a 'go-to-girl' here in Londonderry."

h. Smith said this to me as I was sitting at a Quality Assurance Office desk.

i. Smith, standing behind me, leaned into me, touching my back and putting his hands on my lower back.

j. Then Smith came around to my side and pulled up a chair and crowded me physically into my desk.

j-1 I told him to "back off;" and told him that he "was invading my personal space;" and I gestured for him to back up. I told him to "stop it."

k. Smith required me and others to provide him with our personal cell phone numbers.

l. Then Smith used that knowledge to
    (i) text me his hotel numbers;
    Iii) text me to invite me for drinks;

m. On an occasion when my son had my car, and I was waiting for a ride, Smith kept pressuring me to take a ride with him.

n. I said I was fine and didn't want a ride from him.

o. He pressured me and said, "If you don't get into this car, we'll have problems at work. We need to work together. We need to get along."

p. Although I did not want to, I got into his car and when we got to my house he tried to come in with me.

q. I told him that I did not f__k around with married men and "you are married." "I'm not interested in married men."

r. He said "my wife won't have anything to do with me;" and then he went into his story about JENNIFER BANKS and how she was his "go-to girl" in Georgia and how their personal sexual relationship was beneficial to her; that she got promoted and that "[I] could have the same benefits."

2

s. I reported this to Samantha right away and Samantha reported Smith to KENNY MILLS and DAN DOANE (who now heard of Smith's harassment of both Samantha and me).

t. SMITH was fired about six weeks later and a month or two later, Jennifer Banks was fired for alleged problems with her expense reports.

u. That, along with the fact that Samantha's earlier reports went unheeded by UPS showed me that UPS would favor the harasser over the victim.

v. While Smith was still employed, in the time after I reported him to Samantha,
     (i)  Smith began to micromanage me;
     (ii) he was really nasty to me and questioned everything I did.
     (iii) I tried to make excuses to not work with him;
     (iv) including I did not come in to work on Saturdays.

w. I reported this to Samantha as Scott, her boss, our Quality Assurance supervisor, had quit and Kenny Mills had told me to report to Samantha.

### III. ABOUT JEREMY HELMING WHO HARASSED ME AND RETALIATED AGAINST ME USING SEXUAL HARASSMENT ON CHRISTMAS EVE

8. Scott Gregory was my supervisor at the Quality Assurance Department for only about 3 weeks and I think he quit in July 2015.

9. In about October 2015 JEREMY HELMING was hired to replace Scott Gregory.

a. Helming got angry with me for telling him that he should be out on the floor so he would know what we do in our jobs.

b. He got angry and wrote me up.

c. He made me work on Christmas Eve even though he gave all the temporary employees the day off. I had been informed that UPS employees have priority over temporary employees. Helming told me that it was mandatory that I work on Christmas Eve *because* I was a UPS employee.

d. I came into work on Christmas Eve day and there was no work to do so Helming brought me down to a different department and gave me a tape scraper and told me to get down on the floor and scrape tape off the floor.

e. "I said I wasn't hired to scrape tape off a wet cement floor. That isn't my job!"

f. He said "What? Are you too good to bend over, Paula?  You don't want to bend over?"

g. It was clear he just wanted to look at my fanny, so I walked away back to my department and he wrote me up again.

h. He used sexual harassment to retaliate against me for telling him he should get out on the floor and learn what the jobs were.

i. Subsequently on several occasions Helming commented on how my jeans looked on me with facial expression and body language that implied sexual interest.

j. I did not report this as he kept telling others he wanted to get me fired.


## IV. KEVIN JENKINS WHO HARASSED ME

9. Kevin Jenkins was a Lead in the Kitting Department and a management trainee.. He was married with seven kids.  He freely admitted to smoking pot. He claimed that a part time supervisor in Kentucky was a heroin addict.

10. On or about January 2016 he said to me "Paula, you have a nice ass; bend over!"

11.  Subsequently until he was fired, allegedly for refusing a drug test, he constantly sexually harassed me,  whenever he saw me, including by saying in a sleazy voice:

a. "Did you get fucked last night, Paula?"

b. "Looks like you got fucked last night, Paula."

c. "You are one fine woman."

d. "Are your tits real?"

e. "Let me touch your ass."

f. "How old are you?

g. "Do you have sex to stay in shape?"

h. "Let's have sex.  Have sex with me."

i. "Did you ever see a black dick?"

12. He stuck his tongue way out at me and leered.

13. He grabbed my butt.

14.. I reported Jenkins' sexual harassment to Esther, Human Resources Supervisor at the HR office (who just shook her head, promised to look into it and "get back to me]"; and, while Esther was still working there, I reported it to Stephanie (H.R._ out on the floor and I told Jeremy Helming and my direct supervisor at the time, Jim Mlchany. No one reported back to me. No one encouraged me to report back to them any additional harassment.

## V. RETALIATORY HARASSMENT BY KEVIN FROST, MICHELLE CHIVERS, AND DALE HOUSTON

15. KEVIN FROST became Production Operation Manager sometime in or about 2016.

16. Frost brought in Michelle Shivers, from outside the company, as secretary.

17. I was informed that Frost and Shivers were having an affair, including by Michelle, herself.

18. I thought that was inappropriate and said so. I informed Jessica _____ in Human Resources and my building manager, Julie _____.

19. DALE HOUSTON, Production (who was promoted by Kevin Frost and reported to Kevin Frost) confronted me about my opinion and he started to report me to H.R. at the direction of Frost in retaliation for my complaining about the inappropriateness of Frost and Shivers' conduct. I understand that Houston tried to get me fired by falsely alleging that I created a "hostile work environment."

20. Frost's conduct of romancing Shivers on the work floor was harassing to those of us who had to witness it.

21. I saw him touch Shiver's breasts, butt, waist, and her hair. It made me feel very uncomfortable as this should not be going on at work with a supervisor and a subordinate.

22. Also in retaliation, Shivers sabotaged my work cart so I would get a "turnback" (mistake). Another employee told me that after I left for the day the employee observed Shivers going through my carts in sight of both Kevin Frost and Dale Houston.

23. Also in retaliation and in further sexual harassment, Houston walked up in front of me and put his hands in front of my breasts and opened and closed his fingers in a squeezing motion and asked me, "Can I help you?" I told him to lower his hands.

5

24. Frost witnessed this; he had gone over to the Development side but he was still management and he should have stopped it.

25. Around mid-summer, 2016 I reported my discomfort about the sexual conduct I had witnessed to Kari a second shift auditor and to Brad Hansford, a Production Lead and to Jim Mulchahy who had become a Quality Assurance supervisor in early 2016.

26. Eventually, Frost was promoted to head of first shift Production with Houston, Hansford reported to him.

27. In about March, 2017 Mulchahy told me he could no longer save my job because Frost had too much power and it had been Frost and his lover, Michelle, who had been sabotaging my work. Mulchahy told me to find another job.

27-A. Michelle was an auditor like me. Michelle wanted to get me fired. Her daughter worked in a Human Resources and I believe Michelle was tipped off by her daughter as to my complaints. Michelle and Frost and Houston and Samantha Johnston falsely accused Jim Mulchahy of having an affair with me and Michelle accused him of favoritism. Starting this rumor was terrible and retaliatory because I had complained about her affair with Frost.

27-B. Mulchahy told me that Frost and Michelle were trying to get him fired.

27-C. Sarah _____ a temporary employee told me that Michelle was nasty and had urged her to report Paula because "she wants Paula's job." Sarah also reported this to Jim Mulchahy.

### VI. Harassment by Dave _____ (Production Lead)

28. Dave _____, a Production Lead, harassed me at least twice a week between the fall of 2015 through the fall of 2016.

29. He asked me out all the time; I always declined.

30. He would come up behind me and grab me.

31. He would come up behind me and rub my back down to my butt

32. This was right on the floor in front of everybody.

33. I always expressed disgust.

34. I reported this to Esther in HR. She said she would take care of it, but it did not stop. I did not go back to her as she never did anything. She never wrote anything down when I met with her. I also reported this to Jim Mulchahy. He did nothing. I also reported this to Samantha in H.R. She did nothing.

### VII. Harassment by Kenny _____

35. Kenny was a Production package handler.

36 His boss was Brad Hansford, of the Outbound Shipping Department. I had given Brad my cell number so he could call me if he needed a ride to work.

37. Kenny texted to me a photo of his penis.

38. He asked me out all the time.

39. I reported the penis text to Jim Mulkahey and to Brad Hansford

40. In response, Hansford asked to "hook up."

41. On or about March, 2017, Kenny picked me up by my butt, from behind. I was in an 18-wheeler looking for a cart I had audited. He came from somewhere to behind me and put his hands near my vagina and I screamed and ran from the truck.

42. Hansford asked why was I screaming and I told him that Kenny had picked me up from under my butt and scared me. Hansford made a snide remark ("Well, do you blame him? Look at your ass!")

43. I reported this to Stephanie (HR) who was out on the floor. She said, "I'll look into it and get back to you." She never got back to me.

44. I also reported to Stephanie the false rumors about Jim Mulchahy and me were very upsetting to me and I asked for her help to stop the gossip. I was so upset I punched out early.


### VIII. Harassment/Retaliation by Julie _____ (Division Manager)

44. Ollie Spencer, division manager was replaced by Julie _____.

45. Julie kept touching me by rubbing my back when she spoke with me. I did not like it, but there was no one higher to complain to at my facility. She would come out onto the floor, walk up to me and rub my back, asking "How's Audit going today?"

46.I had a meeting in Julie's office with Jessica Swanson (HR) and reported all the sexual harassment I had suffered from Cliff Smith, Kevin Jenkins, Frost and Houston; and Kenny picking me up from behind.

47. Julie said, "Did you get it all out? Do you feel better now? Let's move on."

48. That crushed me and made me feel helpless. The big boss was mocking me for reporting sexual harassment. She didn't take it seriously. She just wanted to "move on."

49. This was just another of the continuing harassment and retaliation UPS dished out.

IX. Harassment by Christy _____

50. In the first two-three months of 2017 I was harassed by Kenny (above) and Christy almost daily.

51. Christy was a temporary employee whose faulty shipments were "passed" by Michelle who was supposed to be auditing them.

52. I would not pass Christy's bad shipments (wrong parts, over or under on counts; packing issues).

53. Christy would become very angry at me and call me "Bitch," and "cunt" and she would talk about anal sex on the work floor.

54. I reported Christy to her supervisor, Dale Houston, to my supervisor Jim Mulchahy and to Jessica in Human Resources. There is an email about this. I did not receive an apology and to my knowledge, no action was taken in response to my complaint.

X. Harassment by Carl _____

55. Carl _____, a package handler with Kenny in Outbound Shipping, texted me a photo of a cartoon of a face whose big nose was a long penis.

8

56. I reported this to my boss Jim Mulchahy and to Brad Hansford his boss, but they took no action.

### XI. Regarding my Termination

57. On or about April 17 I told Jessica in HR that I was filing a complaint with the Human Rights Commission.

58. Jim Mulchahy had become very hostile towards me, blaming me for placing his job in jeopardy.

59. On April 19, 2017, he approached me at the audit table and questioned me over and over, yelling at me and invading my personal space, talking over me and not allowing me to speak.

60. I put my pen down and walked away, heading to Human Resources to report the hostile work environment and harassment.

61. As I headed towards Human Resources, Jim yelled, "Don't walk away from me!" I knew I had a right to go to Human Resources to be safe and to stop that conduct.

62. Jim ran after me and caught up. I reached the door to Human Resources and went to open the door with a key fob and Jim pushed my arm away, shoving me out of the way so he could use his key fob to open the door.

63. I was shaken and afraid and yelled at him to not touch me. He came after me and a couple of employees held him back and told him "It's not worth it, Jim;" "Don't go after her" or something like that. I rushed to Jessica Swanson's office in H.R. and closed the door.

64. Mike Esseg came into the office and directed Jessica Swanson to stop talking with me.

65. I walked back out on the floor, got my personal belongings and proceeded to go punch out for the day.

66. Jessica said, "Don't punch out, work the remainder of the day. Are you choosing to leave?"

67. I said, "Yes, I'm going to the police department, I don't feel safe."

68. I went to the police department to file an assault charge.

69. That evening Jessica called and told me to not report to work until further notice.

70. On April 21, 2017, Jessica called me to come to her office.

71. She asked me to write a report. I told her I had already filed a report with the police and I didn't want to be pressured to write the report again. I was told I had to leave the building and that I still had a job, but she would not give me my badge back. I said to Jessica that she was denying me access to the building by keeping my badge. Jessica laughed at me.

72. I asked for my personnel file and my FMLA paperwork (previously requested and previously denied) and Jessica refused to supply me with either file.

73. I complied with her request to leave the building and without my badge I cannot return.

74. On April 26, 2017 I was informed in a telephone call with Jessica that I was fired for violating work rules.

75. My termination was in retaliation for all my reports of continuing sexual harassment and continuing retaliation because one cannot allow a situation to become emotional and dangerous to me and then when I react to fire me for that reaction (trying to get away from Mulchahy and get into the HR office before he could stop me.). He was my supervisor. He was provoking me.

76.     It is illegal to retaliate against an employee who was provoked and whose prior complaints had gone totally unanswered.[1]

---

[1] .   "It would be ironic, if not absurd, to hold that one loses protection of an anti-discrimination statute if one gets visibly or audibly upset about discriminatory [retaliatory] conduct." Hertz v. Luzenac America, Inc., 370 F.3d 1014, 1022 (10th Cir. 2004).  See also Trustees of Boston Univ. v. NLRB, 548 F.2d 391, 393 (1st Cir. 1977) (citing NLRB v. M & B Headwear Co., 349 F.2d 170, 174 (4th Cir. 1965). "When an employee is fired because he acted to defend himself against harassment, which supervisors failed to take reasonable measures to prevent or correct, the termination process cannot be said to be free from discrimination. This is so even if the ultimate decision maker was moved purely by a legitimate concern about personnel matters." (Excel Corp. v. Bosley (8th Cir. 1999) 165 F.3d 635, *7. This point was well illustrated in Goodwin v. City of Pittsburgh (1979 W.D. Penn.) 480 F.Supp 527, aff'd, 624 F.2d 1090 (3rd Cir. 1980). In that case,

77. Many times these incidents brought me to tears, and as I cried, I was demeaned by _____ for getting so upset.

78. Others went to Quality Assurance management ( _____ ) to report how unfairly I was treated and how they were told by Michelle Chivers to go to Human Resources and complain about me; to say that I was creating a hostile environment. I am informed one write up was submitted.

79. None of my complaints of sexual harassment resulted with anyone getting back to me to report what action had been taken, to see how I was doing, nor to see if I was suffering any retaliation.

80. As the result of the above described and earlier filed harassment, discrimination and retaliation I have suffered a loss of enjoyment of life, embarrassment, humiliation and financial losses, including, but not limited to, lost wages and benefits, and I seek all remedies and compensation available to me, including but not limited to, back pay, front pay, pain and suffering damages, enhanced compensatory damages, and punitive damages, attorney fees and costs, and an additional monetary award to neutralize the "tax bracket creep" accompanying any award.

81. I also ask for equitable relief of the institution of an anti-discrimination educational program approved by the New Hampshire Commission for Human Rights for all of Defendants' New Hampshire employees, which educational program includes specific and separate components for, and examples of, all types of employment discrimination recognized under federal and New Hampshire law, including all statutes of limitations and remedies; and including internal-to-respondent complaint procedures, rights and remedies for claims of discrimination and retaliation, for a period of five years,  which internal procedure includes an optional independent (not

---

an employee who had filed an EEOC complaint had a confrontation with a co-worker who made discriminatory comments. The conversation was so heated that the police were summoned. The next month, the plaintiff told his supervisor "you're a liar, you always were, and you always will be." (Id., 480 F. Supp. at 631.) The employer terminated plaintiff, citing both of these verbal confrontations. The court found this to be illegal. [An employer ]cannot provoke the Plaintiff into some alleged action and then use that against him to create a seemingly legitimate rationale for the discipline. See e.g., Precision Window Mfg., Inc. v. NLRB, 963 F.2d 1105, 1108 (8th Cir. 1992)(stating that an employer may not provoke an employee and then rely on the employee's intemperate response as a ground for terminating or refusing to reinstate the employee in violation of the National Labor Relations Act).

controlled by respondent) hotline for employee discrimination complaints, all paid for by respondent.

82. In addition, I ask that the above educational program be provided live, once a year, for five years, for all employees, and a video of that live program shall be made available to each new subsequent hire as part of the orientation training; and, that annual reports attesting to the same be made to the New Hampshire Commission for Human Rights.

83. In addition, I ask that on an annual basis, the employer shall distribute a written anti-discrimination policy approved by the New Hampshire Commission for Human Rights, along with a fact sheet stating the statutes of limitations for filing with the HRC and the Equal Employment Opportunity Commission (EEOC) and both agencies' respective phone numbers, email addresses and postal addresses.

Filed
File Date: 7/22/2022 12:59 PM
Hillsborough Superior Court Northern District
E-Filed Document

# New Hampshire Commission for Human Rights



216-2022-CV-00429

**COMMISSIONERS**
CHRISTIAN KIM, CHAIR
DOUGLAS PALARDY
HARVEY KEYE
NANCY LEROY
ALEX SAMUEL
BASRA MOHAMED
ELIZABETH ASCH

**EXECUTIVE DIRECTOR**
AHNI MALACHI

**ASSISTANT DIRECTOR**
SARAH E. BURKE COHEN, ESQ.

**INVESTIGATORS**
KATRINA E. TAYLOR
NICOLE LEMELIN
DANIEL DEYERMOND
KELLY MEDEROS

2 INDUSTRIAL PARK DRIVE, BLDG.1
CONCORD, NEW HAMPSHIRE 03301
TEL (603) 271-2767
TDD Access: Relay NH 1-800-735-2964
FAX (603) 271-6339
E-MAIL: humanrights@hrc.nh.gov
www.nh.gov/hrc

**EXHIBIT B**

May 25, 2022

Nancy Richards-Stower, Esq.
136 Portland Street
Yarmouth, ME 04096

RE:   **Gambeski v. UPS Supply Chain Solutions Inc.**
      **ES(H)(R) 0120-17; 16D-2017-00126**

## ORDERS OF NOTICE

The Investigating Commissioner assigned to the above-referenced charge has made a **finding of Probable Cause on the issue of gender discrimination (sexual harassment).** A copy of the investigative report in this case, which includes the Commissioner's finding is enclosed together with a copy of the Charge of Discrimination and an informational sheet on calculating damages. The Investigating Commissioner assigned to the above-referenced charge has also made a **finding of No Probable Cause on the issue of retaliation**. Information relative to the "No Probable Cause" finding will be sent under separate cover.

**Conciliation**

Pursuant to RSA 354-A: 21, II (a), the commission will endeavor to resolve these matters through conciliation.  Accordingly, the <u>Charging Party</u> is ordered to submit a **conciliation proposal on or before June 10, 2022.**  The <u>Respondent</u> is ordered to submit a **conciliation proposal on or before June 24, 2022.**  A conciliation proposal is a statement of the terms on which the party is willing to settle the matter.  A copy of the proposal must be sent to the Commission and to the other party.

**Prehearing/Conciliation Conference**

If the matter cannot be resolved in advance, a prehearing and conciliation conference will be held on **July 5, 2022**, **starting at 10:00 am.**  The parties will discuss and determine whether this event will occur in-person at the Commission's office located at 2 Industrial Park Drive in Concord or virtually.  The purpose of the prehearing conference is to explore conciliation further, clarify the issues, determine the witness list, discuss discovery and review any other matters which may aid in the disposition of the hearing.  **PHYSICAL ATTENDANCE OF PARTIES, THEIR COUNSEL AND ANYONE ELSE WITH SETTLEMENT AUTHORITY IS MANDATORY.  DO NOT MAKE ANY OTHER APPOINTMENTS FOR THIS DAY AS IT OFTEN TAKES MOST OR ALL DAY FOR CONCILIATION.**

**The parties should prepare a preliminary list of their exhibits and witnesses and submit a copy of each list to the Commission on the date of the pre-hearing conference, with a copy to the other party.  On or before the date of the pre-hearing conference the complainant shall file the detailed request for the relief required pursuant to RSA 354-A: 21, II (d).  The detailed request for relief should include an explanation of how damages have been computed, supporting documentation, such as W-2's and other wage information, attempts to mitigate damages, and any medical records or statements the complainant intends to rely upon in support of the conciliation proposal.**

**Discovery**

Parties should begin any necessary discovery upon receipt of this notice.  Please contact the other party to schedule depositions (if needed) and exchange of documents.  Please contact the commission if there are disagreements which need to be resolved.  You do not need to wait until the prehearing conference to resolve discovery issues.

**Public Hearing**

In the event conciliation fails and pursuant to the authority in NH RSA 354-A:21, a **public hearing will be held on February 15, 2023** starting at 9:00 AM.  The Commission reserves the right to determine whether this event takes place in-person at the Commission's office located at 2 Industrial Park Drive in Concord, New Hampshire, at another location or virtually.  **PLEASE NOTE THIS IS THE *FOURTH* CASE SCHEDULED FOR THIS DATE.  THE CASE WILL GO FORWARD <u>ONLY</u> IF THE FIRST THREE CASES RESOLVE IN ADVANCE OF THE PUBLIC HEARING DATE.**

The issue(s) to be tried:  **Whether Complainant was subject to sexual harassment based on a hostile work environment by Respondent in violation of NH RSA 354-A, et seq.?**

Parties have the right to be represented by an attorney during these proceedings at their own expense.

Please do not hesitate to contact me if you have any questions.

Sincerely,

Sarah E. Burke Cohen, Esq.
Assistant Director

*Encl*.

Cc:     Melinda Caterine, Esq.

<b>PLEASE NOTE: REQUESTS FOR A CONTINUANCE SHOULD<br>BE FILED WITHIN 10 DAYS OF THIS NOTICE.</b>